Case: 1:18-cv-05037 Document #: 53-3 Filed: 11/15/18 Page 1 of 87 PageID #:714
USDC IN/ND case 2:20-cv-00256-JTM-JEM   document 3   filed 12/27/17   page 1 of 14

Exb. 9

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE LAKE CIRCUIT/SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF LAKE | ) | |

COUNTRYSIDE BANK, )
  Plaintiff, )
    v. )
BUSHRA NASEER and SEAN Z. SHEIKH, JR., ) CAUSE NO.:
CENTRAL MARKET OF INDIANA, INC., an )
Indiana corporation, 3232 CENTRAL AVENUE )
LLC, an Indiana limited liability company, HASAN )
MUSLEH, NASER MUSLEH, M.R. ALLAH, LLC, )
ZAFAR SHEIKH, BASHIR CHAUDRY, )
ASSOCIATED WHOLESALE GROCERS, INC., )
WILSHIRE BANK, and UNKNOWN OWNERS )
and NON-RECORD CLAIMANTS. )
  Defendants.

## COMPLAINT TO FORECLOSE COMMERCIAL MORTGAGE AND FOR OTHER RELIEF

Plaintiff COUNTRYSIDE BANK ("Plaintiff") alleges the following cause of action against Defendants BUSHRA NASEER and SEAN Z. SHEIKH, JR. (collectively, "Guarantors"), CENTRAL MARKET OF INDIANA, INC., an Indiana corporation and 3232 CENTRAL AVENUE LLC, an Indiana limited liability company, NASER MUSLEH, M.R. ALLAH, LLC, ZAFAR SHEIKH, BASHIR CHAUDRY, ASSOCIATED WHOLESALE GROCERS, INC., WILSHIRE BANK, UNKNOWN OWNERS and NON-RECORD CLAIMANTS.

**The Parties**

1. Plaintiff is a bank chartered under the laws of the State of Illinois.

2. Bushra Naseer is an individual resident and citizen of the State of Illinois.

3. Sean Z. Sheikh is an individual resident and citizen of the State of New York.

4. Central Market of Indiana, Inc. is an Indiana corporation with its principal place of business in Indiana.

1

5. 3232 Central Avenue LLC is an Indiana limited liability company with its principal place of business in Indiana.

6. Naser Musleh is an individual resident and citizen of the State of Indiana.

7. M.R. Allah, LLC is believed to be an Indiana limited liability company.

8. Zafar Sheikh is an individual resident and citizen of the State of Illinois.

9. Bashir Chaudry is an individual resident and citizen of the State of Illinois.

10. Associated Wholesale Grocers, Inc. is a corporation organized under the laws of the State of Kansas, with its principal place of business at 5000 Kansas Avenue, Kansas City, KS 66106.

11. Wilshire Bank is a bank organized under the laws of the State of California, with its principal place of business at 3200 Wilshire Boulevard, 7th Floor, Los Angeles, CA 90010.

12. The acts that give rise to this suit occurred substantially in Lake County, Indiana and venue of this cause is proper pursuant to Trial Rule 75.

**The Business Loan**

13. On or about 5/14/2015, Plaintiff entered into a Loan Agreement with Central Market of Indiana, Inc. and 3232 Central Avenue LLC ("Borrowers"), attached hereto as *Exhibit A*, by which Plaintiff agreed to loan Borrowers the sum of $1,837,000. Borrowers executed a Note promising to repay the loan in monthly installments of $11,826.06 (the "Note"), a true and correct copy of which is attached hereto as *Exhibit B*.

14. In consideration of funds loaned to Borrowers and to secure the indebtedness under the Note, 3232 Central Avenue LLC executed a Mortgage and Assignment of Rents in favor of Plaintiff, which were recorded on 5/28/2015 with the Lake County Recorder of Deeds as Doc. Nos: 2015 032543 and 2015 032544, respectively, and are attached hereto as *Exhibit C*.

E-FILED  2017 Dec 27 PM 3 07   LAKE COUNTY CLERK OF THE COURT  Michael A Brown
45D02-1712-MF-00218   PROCESSED: 2017 Dec 27 PM 3 24 by Deputy CG

15. The Mortgage and Assignment of Rents encumber property commonly known as 3232 Central Avenue, Lake Station, Indiana (the "Mortgaged Property"), legally described as:

> PARCEL 1
> THAT PART OF SECTION 17, TOWNSHIP 36 NORTH, RANGE 7 WEST OF THE SECOND PRINCIPAL MERIDIAN, IN LAKE COUNTY, INDIANA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE POINT OF INTERSECTION OF THE NORTH LINE OF CENTRAL AVENUE (AS NOW LOCATED IN THE CITY OF LAKE STATION, INDIANA), WITH THE EAST PROPERTY LINE OF THE STANDARD OIL COMPANY OF INDIANA, THE SAID EAST PROPERTY LINE BEING THE SAME LINE AS DESCRIBED IN DEED OF CONVEYANCE FROM THE MICHIGAN CENTRAL RAILROAD COMPANY AND THE NEW YORK CENTRAL RAILROAD COMPANY TO THE STANDARD OIL COMPANY OF INDIANA AND RECORDED AUGUST 10, 1959 IN DEED RECORD 1122, PAGE 562 IN THE OFFICE OF THE RECORDER OF LAKE COUNTY INDIANA. THENCE EASTERLY FROM SAID POINT OF INTERSECTION, ALONG THE NORTHERLY LINE OF CENTRAL AVENUE, A DISTANCE OF 250 FEET, THENCE NORTHERLY AT RIGHT ANGLES TO THE NORTHERLY LINE OF CENTRAL AVENUE A DISTANCE OF 220 FEET THENCE WESTERLY AND PARALLEL TO THE NORTHERLY LINE OF CENTRAL AVENUE A DISTANCE OF 250 FEET TO THE SAID EAST PROPERTY LINE OF SAID STANDARD OIL COMPANY OF INDIANA. THENCE SOUTHERLY ALONG ALONG SAID EAST PROPERTY LINE A DISTANCE OF 220 FEET, MORE OR LESS TO THE POINT OF BEGINNING
>
> PARCEL 2
> PART OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 17, TOWNSHIP 36 NORTH, RANGE 7 WEST OF THE SECOND PRINCIPAL MERIDIAN, IN THE CITY OF LAKE STATION, LAKE COUNTY, INDIANA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT A POINT OF THE ORIGINAL NORTHERLY LINE OF CENTRAL AVENUE (50 FOOT WIDE) AND THE EAST LINE OF SAID SECTION 17, THENCE WESTERLY ALONG SAID ORIGINAL NORTH LINE 852.46 FEET TO A POINT 150 FEET EASTERLY OF THE EASTERLY LINE OF PIKE STREET, THENCE NORTHERLY AT RIGHT ANGLES 129 FEET TO THE POINT OF BEGINNING OF THIS DESCRIBED PARCEL; THENCE CONTINUING NORTHERLY ON SAID LINE 91 FEET, THENCE WESTERLY AT RIGHT ANGLES 151.94 FEET TO THE EASTERLY LINE OF PIKE STREET. THENCE SOUTHERLY 91 FEET, MORE OR LESS, TO A POINT 129 FEET NORTHERLY OF THE ORIGINAL NORTHERLY LINE OF CENTRAL AVENUE; THENCE EASTERLY 151.14 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.
>
> PARCEL 3
> THAT PART OF THE SE 1/4 OF THE NE 1/4 OF SECTION 17, TOWNSHIP 36 NORTH, RANGE 7 WEST OF THE 2ND P.M., IN THE CITY OF LAKE STATION, LAKE COUNTY, INDIANA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: THE WESTERLY 842.42 FEET OF THE FOLLOWING DESCRIBED TRACT, SUCH 842.42 FEET MEASURED BY A LINE PARALLEL TO AND 842.42 FEET EAST OF THE EAST LINE OF PIKE STREET. COMMENCING AT THE INTERSECTION OF THE EAST RIGHT-OF-WAY LINE OF PIKE STREET AND THE NORTH RIGHT-OF-WAY LINE OF CENTRAL AVENUE (50 FEET WIDE), THENCE NORTH 16 DEGREES 16 MINUTES 50 SECONDS WEST, ALONG THE EAST RIGHT-OF-WAY LINE OF PIKE STREET, A DISTANCE OF 240 FEET TO THE POINT OF BEGINNING OF THIS DESCRIBED PARCEL, THENCE NORTH 16 DEGREES 16 MINUTES 50 SECONDS WEST, ALONG THE EAST RIGHT-OF-WAY LINE OF PIKE STREET, A DISTANCE OF 73.49 FEET TO THE SOUTH RIGHT-OF-WAY LINE OF THE MICHIGAN CENTRAL RAILROAD (NOW CONSOLIDATED RAIL CORPORATION), THENCE NORTHEASTERLY ALONG SAID SOUTH RIGHT-OF-WAY LINE, A DISTANCE OF 1090.05 FEET MORE OR LESS TO THE EAST LINE OF SAID SECTION 17, THENCE SOUTH ALONG THE EAST LINE OF SAID SECTION 17, A DISTANCE OF 51.93 FEET TO A POINT WHICH IS THE NORTHEAST CORNER OF A TRACT CONVEYED TO ARTISTIC CLEANERS, INC., BY THE MICHIGAN CENTRAL RAILROAD COMPANY AND THE NEW YORK CENTRAL RAILROAD COMPANY BY QUIT-CLAIM DEED DATED APRIL 13, 1959, AND RECORDED IN THE OFFICE OF THE RECORDER OF LAKE COUNTY, INDIANA, ON MAY 28, 1959, IN BOOK 1117 PAGE 25. THENCE SOUTHWESTERLY AND PARALLEL TO THE NORTH LINE OF CENTRAL AVENUE, A DISTANCE OF 270.43 FEET TOT HE NORTHWEST CORNER OF SAID TRACT CONVEYED TO ARTISTIC CLEANERS, INC., THENCE SOUTHEASTERLY AT RIGHT ANGLES A DISTANCE OF 10 FEET TO A POINT, THENCE SOUTHWESTERLY AT RIGHT ANGLES AND PARALLEL TO THE NORTH LINE OF CENTRAL AVENUE, A DISTANCE OF 802.46 FEET MORE OR LESS TO A POINT ON THE EAST RIGHT-OF-WAY LINE OF PIKE STREET 240 FEET NORTHERLY OF THE NORTH LINE OF CENTRAL AVENUE (50 FEET WIDE) MEASURED ALONG THE EAST RIGHT-OF-WAY LINE OF PIKE STREET, WHICH POINT IS THE POINT OF BEGINNING

Tax Identification Nos. 45-09-17-276-004.021; 45-09-17-276-002.021; 45-09-17-276-001.021.

16. In consideration of funds loaned to Borrowers, Guarantors guaranteed the obligations under the Note by executing Unconditional Guarantees, true and correct copies of which are attached hereto as *Exhibit D*.

17. In consideration of funds loaned, Borrowers gave Plaintiff a security interest in all of their inventory, equipment, accounts, money, fixtures, equipment, inventory, and other collateral

3

and all products and proceeds thereof (the "Collateral"), as detailed in the Commercial Security Agreement attached hereto as *Exhibit E*.

18. The Commercial Security Agreement, page 2, provides that "all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds."

19. Plaintiff filed its UCC Financing Statement #201500004036465 on 5/22/2015 to perfect its security interest in the Collateral, which is attached hereto as *Exhibit F*. Plaintiff's interest in the Collateral is superior to that of the following defendants, who may also claim an interest in the Collateral, by virtue of UCC financing statements they have filed:

   a. Wilshire Bank may claim an interest in the Collateral by virtue of UCC Financing Statement #201600002555460 filed on 4/5/2016; and
   b. Associated Wholesale Grocers, Inc. may claim an interest in the Collateral by virtue of UCC Financing Statement #201700004349545 filed on 5/24/2017.

20. Plaintiff also filed its UCC Financing Statement #20150000229 and recorded it with the Lake County Recorder of Deeds to perfect its interest in fixtures, which is attached hereto as *Exhibit G*.

21. The Note provides that if a payment is late by 10 days or more, Borrowers may be charged a late fee of up to 5.000% of the unpaid portion of the regularly scheduled payment. Note, p. 2.

**Defendants' Defaults**

22. Borrowers defaulted on the obligations under the Note and, as of 10/14/2017, Borrowers were in default for failure to pay the amount of $69,375.55 that was past due under the Note. Notices of default were provided to Borrowers on 10/25/2017 and on 12/1/2017 and true and correct copies are attached hereto as *Exhibit H*.

E-FILED  2017 Dec 27 PM 3 07    LAKE COUNTY CLERK OF THE COURT  Michael A Brown
45D02-1712-MF-00218    PROCESSED: 2017 Dec 27 PM 3 24 by Deputy CG

23. Due to Borrowers' default, Plaintiff has declared and does hereby declare the entire unpaid principal and all accrued unpaid interest immediately due and payable. As of 12/1/2017, the sum of $1,831,380.28 remained due and owing under the Note, with interest thereafter at a rate of $340.31 per day, calculated as follows:

| DEFAULT AMOUNT DUE AS OF | 12/1/2017 |
|---|---|
| Principal | $1,774,474.36 |
| Regular Interest | $53,077.01 |
| Late Charges | $3,678.91 |
| Release Fee | $150.00 |
| Subtotal | $1,831,380.28 |
| Per diem interest | $340.31 |

**Fraudulent Payments to Naser Musleh**

24. Borrowers purchased the Mortgaged Property from Naser Musleh, using funds loaned by Plaintiff. In consideration of that loan, Borrowers, Guarantors, and Naser Musleh agreed that Borrowers' unpaid debt to Naser Musleh for the purchase of the Mortgaged Property would be subordinated to Plaintiff's loan and that no payments would be made to Naser Musleh until the Note to Plaintiff was fully paid, as reflected in the $300,000 Promissory Note attached hereto as *Exhibit I* (the "Musleh Note") and the Subordination Agreement attached hereto as *Exhibit J*.

25. Through the Subordination Agreement, Naser Musleh agreed:

   a. that he would not accept any payment from Borrowers or Guarantors so long as any amount remained owing to Plaintiff on the Note;

   b. that if he received any such payment, he would "immediately...deliver same to [Plaintiff]." Subordination Agreement, p. 1;

   c. that he would pay all of Plaintiff's costs and expenses, including attorney's fees and legal expenses incurred in connection with the enforcement of the Subordination Agreement. Subordination Agreement, p. 2.

26. Contrary to Borrowers' agreements and with the intent to defraud Plaintiff of its right to payment under the Note, the Loan Agreement, and the Subordination Agreement, Borrowers and

5

Guarantors have caused the transfer of funds to Naser Musleh to satisfy the Musleh Note. Naser Musleh has retained those funds and refuses to relinquish the funds to Plaintiff.

**Unauthorized Lease of the Mortgaged Premises and Fraudulent Transfers of Collateral**

27. Zafar Sheikh and Bashir Chaudry, purporting to act as members of 3232 Central Market LLC, have leased the Mortgaged Premises to Hasan Musleh and M.R. Allah, LLC, pursuant to the Lease attached hereto as *Exhibit K* (the "Commercial Store Lease").

28. Pursuant to the Commercial Store Lease, Zafar Sheikh and Bashir Chaudry, purporting to act as members of 3232 Central Market LLC, caused the transfer of Collateral to Hasan Musleh, in derogation of Plaintiff's rights under the Commercial Security Agreement.

29. Pursuant to the Commercial Store Lease, Zafar Sheikh, Bashir Chaudry, and 3232 Central Avenue LLC have acknowledged that they received the sum of $20,000 from the Lessee upon the signing of the Commercial Store Lease, which sums have not been remitted to Plaintiff. Commercial Store Lease, ¶7.

### COUNT I - LIABILITY OF BORROWERS ON PROMISSORY NOTES

30. Plaintiff realleges Paragraphs 1 through 29.

31. Borrowers are liable to Plaintiff on the Note in the amount of $1,831,380.28 as of 12/1/2017, with interest thereafter at a rate of $340.31 per day.

32. Plaintiff has incurred costs and attorney fees to collect amounts due under the Note, which requires Borrowers to pay such expenses, including attorney fees and costs. Note, p. 3. Borrowers are liable for those costs and fees to collect the Note.

WHEREFORE, Plaintiff demands judgment against Borrowers in the amount of at least $1,831,380.28 as of 12/1/2017, with interest thereafter at a rate of $340.31 per day, together with all costs of collection and attorney fees and all other proper relief.

E-FILED 2017 Dec 27 PM 3 07 | LAKE COUNTY CLERK OF THE COURT Michael A Brown
45D02-1712-MF-00218 | PROCESSED: 2017 Dec 27 PM 3 24 by Deputy GG

## COUNT II - FORECLOSURE OF MORTGAGE

33. Plaintiff realleges Paragraphs 1 through 29.

34. Plaintiff's claims and interests in the Note, Mortgage, and related instruments constitute senior and paramount claims against the Mortgaged Property that are prior to the claims and interests of the defendants or any other persons or entities in and to the Mortgaged Property, except for the lien of real estate taxes and assessments now or hereafter due and payable.

35. All conditions precedent have been performed, have occurred, or have been excused.

WHEREFORE, Plaintiff requests that the Court:

(a) enter judgment determining that Plaintiff's Mortgage is a valid, first, and subsisting lien on the Mortgaged Property, superior to all interests asserted against the Mortgaged Property by any of the defendants, by anyone claiming under or through any of the defendants, or by any other person or entity (excepting only the lien of taxes and assessments against the Mortgaged Property now or hereafter due and payable);

(b) enter judgment in favor of Plaintiff and against Borrowers in the current aggregate sum of not less than $1,831,380.28, plus interest at the rate of $340.31 per day after 12/1/2017, together with all costs of collection and attorney fees;

(c) enter an order foreclosing the Mortgage on the Mortgaged Property, foreclosing and barring the equity of redemption and interest of the defendants in the Mortgaged Property;

(d) enter an order directing the sale of the Mortgaged Property in order to satisfy the expenses of sale and Plaintiff's judgment as provided by law; providing that at such sale Plaintiff shall be empowered to credit bid for the Mortgaged Property with the indebtedness secured by the Mortgage to be credited with the amount bid by Plaintiff if it is the successful bidder; and further providing that, upon the expiration or waiver of the statutory period of redemption and the execution by the Sheriff of Lake County, Indiana, of the deed of conveyance of the Mortgaged Property sold thereunder, all of the defendants shall forthwith surrender to the holder of the Sheriff's Deed full and peaceful possession of the Mortgaged Property, and upon failure to do so, the Sheriff of Lake County, Indiana, shall be directed to forthwith enter the Mortgaged Property and eject and remove any defendants therefrom and put the party holding such Sheriff's Deed, or its assignee, into full peaceful and quiet possession of the Mortgaged Property without delay;

(e) enter an order determining that the rights of all defendants are junior, subordinate and inferior to the rights of Plaintiff under the Mortgage; and

(f) grant Plaintiff all other proper relief.

## COUNT III - LIABILITY OF GUARANTORS ON UNCONDITIONAL GUARANTEES

36. Plaintiff realleges Paragraphs 1 through 29.

E-FILED  2017 Dec 27 PM 3 07   LAKE COUNTY CLERK OF THE COURT Michael A Brown
45D02-1712-MF-00218   PROCESSED: 2017 Dec 27 PM 3 24 by Deputy CG

37. Through the Unconditional Guarantees, Guarantors "unconditionally guarantee[d] payment to Lender of all amounts owing under the Note." Commercial Guarantees, p. 1.

38. Guarantors are liable to Plaintiff on the Unconditional Guarantees in the amount of at least $1,831,380.28 as of 12/1/2017, with interest thereafter at a rate of $340.31 per day, together with all costs of collection and attorney fees.

39. Plaintiff has incurred costs and attorney fees to help collect the Unconditional Guarantees. Through the Unconditional Guarantees, Guarantors promised to pay all expenses of enforcement, including attorney fees. Unconditional Guarantees, p. 2. Guarantors are liable for those costs and fees to collect the Unconditional Guarantees.

WHEREFORE, Plaintiff demands judgment against Guarantors, jointly and severally, in the amount of at least $1,831,380.28, plus interest at the rate of $340.31 per day after 12/1/2017, together with all costs of collection and attorney fees and all other proper relief.

## COUNT IV - BREACH OF SUBORDINATION AGREEMENT

40. Plaintiff realleges Paragraphs 1 through 29.

41. Borrowers, Guarantors, and Naser Musleh are liable to Plaintiff for breach of the agreements under the Musleh Note and the Subordination Agreement by causing payments to be made to Naser Musleh prior to the full satisfaction of Borrowers' debt to Plaintiff.

42. Borrowers have received payments sufficient to retire fully the Musleh Note, which amounts should have been paid to Plaintiff.

43. Plaintiff has been damaged in the sum of at least $300,000 as a result of the improper payments under the Musleh Note.

44. Borrowers, Guarantors, and Naser Musleh are jointly and severally liable for Plaintiff's attorney's fees and other expenses of its enforcement of the Subordination Agreement.

8

WHEREFORE, Plaintiff demands judgment against Borrowers, Guarantors, and Naser Musleh in the amount of at least $300,000 for breach of the Subordination Agreement, plus interest, costs of collection, attorney fees, and all other proper relief.

### COUNT V - FORECLOSURE OF COMMERCIAL SECURITY AGREEMENT AND REQUEST FOR ACCOUNTING

45. Plaintiff realleges Paragraphs 1 through 29.

46. The Commercial Security Agreement provides that upon default, Plaintiff has all rights of a secured party under the Indiana UCC, including the right to require Borrowers to "deliver to [Plaintiff] all or any portion of the Collateral. Commercial Security Agmt, p. 4.

47. Plaintiff exercised its option to take possession of the Collateral through the correspondence sent on 12/1/2017 and attached hereto as *Exhibit H*.

48. Due to Borrowers' default in the performance of its obligations due and owing to Plaintiff under the Note and Security Agreement, and, pursuant to the terms and conditions of the Security Agreement, Plaintiff is entitled to foreclose its interest in the Collateral.

49. Each of Associated Wholesale Grocers, Inc., Wilshire Bank, Naser Musleh, and M.R. Allah have been made defendants to this case to answer for any right, title, interest, and/or other claim it may have with respect to the Collateral and must assert any such right, title, interest, and/or claim herein or be forever barred.

50. The liens and security interests created by the Security Agreement are superior to all defendants and superior to all claims, liens and interests asserted by any party claiming an interest by, through or under them.

51. All other claims of Borrowers or any party claiming an interest by, through or under Borrowers are junior, inferior, and subordinate to the liens and interest held by Plaintiff, which liens and interest Plaintiff hereby requests be foreclosed, and Plaintiff hereby requests that the

9

Collateral be delivered to Plaintiff and, if necessary, sold in accordance with all applicable laws in order to satisfy any judgment rendered herein in favor of Plaintiff.

52. Plaintiff has incurred costs, expenses, and attorneys' fees in its efforts to enforce the Security Agreement, and additional attorneys' fees will be incurred prior and subsequent to judgment in this matter. All costs, expenses, and attorneys' fees incurred by Plaintiff in this action are recoverable from Borrowers pursuant to the terms of the Security Agreement.

WHEREFORE, Plaintiff respectfully requests that the Court grant:

(a) Judgment against Borrowers and that Plaintiff's interest in the Collateral be foreclosed against defendants and in favor of Plaintiff and declared superior to all right, title, and interest in and to the Collateral claimed by Borrowers, or by any other parties herein and/or anyone claiming through Borrowers or through any party herein other than Plaintiff;

(b) Judgment foreclosing Plaintiff's liens, foreclosing and barring Borrowers' right of redemption and the right of redemption of all parties herein other than Plaintiff, and foreclosing and barring any right, title, interest, or lien of any person claiming through Borrowers or through any party other than Plaintiff in, to or with respect to the Collateral;

(c) Judgment directing the sale of the Collateral by the Sheriff of the county in which such Collateral is located or by other means allowed by law, with Plaintiff permitted to bid in its judgments in this action, with the proceeds of such sale to be applied to the cost of sale, and then to the judgments of Plaintiff, with the surplus, if any, to be paid as ordered by the Court and with the deficiency, if any, to be paid by Borrowers;

(d) Judgment directing Borrowers and all parties herein to surrender full and peaceful possession of the Collateral to the holder of such deed, bill of sale, or a copy thereof as results from the Sheriff's sale;

(e) Judgment directing that if, upon liquidation of the Collateral and application of the proceeds therefrom to the debts, obligations, and liabilities owed to Plaintiff, there remain amounts due under the Note, Plaintiff shall have the right immediately to execute against all of Borrowers' and Guarantors' assets to satisfy such deficiency; and

(f) Such other relief as may be just and proper in the premises.

### COUNT VI - ENFORCEMENT OF ASSIGNMENT OF RENTS AND REQUEST FOR ACCOUNTING

53. Plaintiff realleges Paragraphs 1 through 29.

54. The Assignment of Rents assigns to Plaintiff all of Borrowers' rights in the rents from the Mortgaged Property and defines "rents" to mean:

10

all of [3232 Central Avenue LLC's] present and future rights, title and interest in, to and under all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the [Mortgaged] Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation [3232 Central Avenue LLC's] right to enforce such leases and to receive and collect payment and proceeds thereunder.

(hereinafter the "Rents"). Assignment of Rents, p. 7.

55. By virtue of the Assignment of Rents securing the Mortgage Loans and by virtue of Borrowers' defaults, Plaintiff has a right to enforce the Commercial Store Lease and has a superior and secure interest in and is entitled to receive the Rents from the Mortgaged Property, and is further allowed to exercise all of its rights, at law or in equity, under the Assignment of Rents, and its interest thereon.

56. By letter dated 12/20/2017, a true and correct copy of which is attached hereto as *Exhibit L*, Plaintiff exercised its Assignment of Rents and required that the current tenant of the Mortgaged Property pay all rents directly to Plaintiff.

57. 3232 Central Avenue LLC is therefore liable to Plaintiff as a fiduciary as to all of such rents and holds them in trust for Plaintiff. Plaintiff is entitled to an accounting for those rents.

58. All conditions precedent have been performed, have occurred, or have been excused.

WHEREFORE, Plaintiff respectfully requests that the Court:

(a) declare Plaintiff's security interest in the Rents from the Mortgaged Property, as evidenced by the Assignment of Rents to be a valid interest in the Rents from the Mortgaged Property, superior to all other interests asserted in the Rents from the Mortgaged Property by any person or entity claiming under or through Borrowers or by any other person or entity;

(b) enter an order foreclosing Plaintiff's security interest in the Rents from the Mortgaged Property and foreclosing and barring Borrowers' interest in the Rents from the Mortgaged Property;

(c) enter an order granting Plaintiff's right to collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Plaintiff's costs, against Borrowers' obligations and indebtedness;

(d) order Borrowers to provide an accounting for all rents held or collected; and

(e) grant Plaintiff all other just and proper relief.

E-FILED 2017 Dec 27 PM 3 07    LAKE COUNTY CLERK OF THE COURT Michael A Brown
45D02-1712-MF-00218    PROCESSED: 2017 Dec 27 PM 3 24 by Deputy CG

### COUNT VII - FRAUD BY BUSHRA NASEER, SEAN Z. SHEIKH, JR., AND NASER MUSLEH

59. Plaintiff realleges Paragraphs 1 through 29.

60. The payments that Bushra Naseer and Sean Z. Sheikh, Jr., caused to be made on the Musleh Note, prior to satisfaction of the Note to Plaintiff, were transfers of property made with intent to defraud Plaintiff and therefore constitute fraud in violation of IC 35-43-5-4.

61. Naser Musleh, Bushra Naseer, and Sean Z. Sheikh, Jr., have committed fraud on a financial institution in violation of IC 35-43-5-8(a) by knowingly executing a scheme to obtain Plaintiff's money through false and fraudulent pretenses, representations, and promises of intent to subordinate the Musleh Note to Plaintiff's Note, while knowing that they would pay the Musleh Note prior to full payment on Plaintiff's Note.

62. Plaintiff has suffered a pecuniary loss of at least $300,000 as a result of violations of IC 35-43-5-4 and 35-43-5-8(a) by Naser Musleh, Bushra Naseer, and Sean Z. Sheikh, Jr., and is therefore entitled to actual damages and up to three times the actual damages and a reasonable attorney's fee, along with other expenses pursuant to the Indiana Crime Victims Compensation Act, IC 34–24–3–1. *See Klinker v. First Merchants Bank, N.A.*, 964 N.E.2d 190, 193 (Ind. 2012)

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against Naser Musleh, Bushra Naseer, and Sean Z. Sheikh, Jr., jointly and severally, for violations of IC 35-43-5-4 and 35-43-5-8(a) and award Plaintiff actual damages against them in the sum of at least $300,000, and up to three times the actual damages for a total of $900,000, plus a reasonable attorney's fee and other expenses pursuant to the Indiana Crime Victims Compensation Act, IC 34–24–3–1, and grant Plaintiff all other just and proper relief.

### COUNT VIII - FRAUD BY ZAFAR SHEIKH, BASHIR CHAUDRY, AND HASAN MUSLEH

63. Plaintiff realleges Paragraphs 1 through 29.

12

64. The transfers of Collateral to Hasan Musleh were transfers of property made with intent to defraud Plaintiff and therefore constitute fraud in violation of IC 35-43-5-4.

65. As reflected in the Inventory attached hereto as *Exhibit M*, Borrowers and their principals represented that the inventory that served as Collateral and was transferred to Hasan Musleh had a value of $598,529.22.

66. Zafar Sheikh and Bashir Chaudry have committed fraud on a financial institution in violation of IC 35-43-5-8(a) by knowingly executing a scheme to deprive Plaintiff of its interest in the Collateral through false and fraudulent pretenses.

67. Plaintiff has suffered a pecuniary loss of at least $598,529.22 as a result of violations of IC 35-43-5-4 and 35-43-5-8(a) by Zafar Sheikh, Bashir Chaudry, and Hasan Musleh and is therefore entitled to actual damages and up to three times the actual damages and a reasonable attorney's fee, along with other expenses pursuant to the Indiana Crime Victims Compensation Act, IC 34–24–3–1. *See Klinker v. First Merchants Bank, N.A.*, 964 N.E.2d 190, 193 (Ind. 2012)

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against Zafar Sheikh, Bashir Chaudry, and Hasan Musleh, jointly and severally, for violations of IC 35-43-5-4 and 35-43-5-8(a) and award Plaintiff actual damages against them in the sum of at least $598,529.22, and up to three times the actual damages for a total of $1,795,587.66, plus a reasonable attorney's fee and other expenses pursuant to the Indiana Crime Victims Compensation Act, IC 34–24–3–1, and grant Plaintiff all other just and proper relief.

## COUNT IX - APPOINTMENT OF RECEIVER

68. Plaintiff realleges Paragraphs 1 through 29.

69. IC 32-30-5-1(4) provides that a court shall appoint a receiver "[i]n actions in which a mortgagee . . . upon motion by the mortgagee . . . if, at the time the motion is filed, the property is not occupied by the owners as the owner's principal residence and . . . it appears that the

E-FILED 2017 Dec 27 PM 3 07    LAKE COUNTY CLERK OF THE COURT  Michael A Brown
45D02-1712-MF-00218    PROCESSED: 2017 Dec 27 PM 3 24 by Deputy CG

property may not be sufficient to discharge the mortgaged debt [or] either the mortgagor or the owner of the property has agreed in the mortgage or in some other writing to the appointment of a receiver." Ind. Code § 32-32-5-1(4)(C) and (D).

70. By the following provision in the Mortgage, which satisfies the consent requirements of IC 32-30-5-1(4), 3232 Central Avenue LLC consented to the appointment of a receiver upon the occurrence of any default:

> Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment my Lender shall not disqualify a person from serving as a receiver.

Mortgage, p. 8.

71. The Mortgaged Property is not occupied by 3232 Central Avenue LLC as a residence and is not serving as the principal residence of any person.

72. All conditions precedent have been performed, have occurred, or have been excused.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order appointing a Receiver over the Mortgaged Property and grant Plaintiff all other just and proper relief.

Respectfully submitted,

s/ Nancy J. Townsend
Nancy J. Townsend, #17178-45
BURKE COSTANZA & CARBERRY LLP
Attorneys for COUNTRYSIDE BANK
9191 Broadway
Merrillville, Indiana 46410
(219) 769-1313
Townsend@bcclegal.com

14